Jesse M. Caryl, Bar No. 208687
BENT CARYL & KROLL, LLP
6300 Wilshire Boulevard, Suite 1415
Los Angeles, California 90048
Telephone: (323) 315-0510
Facsimile: (323) 774-6021
jcaryl@bcklegal.com

Attorneys for Defendants
BUCA, Inc. and BUCA Restaurants 2, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONNELL M. JOHNSON, on behalf of himself, all others similarly situated,<br><br>   *Plaintiff*,<br><br>vs.<br><br>BUCA, INC., a Minnesota corporation; BUCA RESTAURANTS 2, INC., a Minnesota corporation, and DOES 1 through 50, inclusive,<br><br>   *Defendants*. | CASE NO.   5:18-cv-7331<br><br>**DEFENDANTS' NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. SECTIONS 1332, 1441, AND 1446**<br><br>[Concurrently filed with the Declarations of Danilo Acampado and Giovanni Yruela]<br><br>Action filed: November 1, 2018<br>Trial date:   None |

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, PLAINTIFF AND HIS COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that defendants BUCA, Inc. ("BUCA") and BUCA Restaurants 2, Inc. ("BR2") (collectively, "Defendants"), by and through their undersigned counsel, hereby remove this action from the Superior Court of the State of California for the County of Santa Clara ("Superior Court") to the United States District Court for the Northern District of California pursuant to 28 U.S.C.

sections 1332 (as amended by the Class Action Fairness Act of 2005, Pub. L. 109-2, section 4(a) ("CAFA")), 1441(a) and (b), and 1446, based on the following:

## I. STATUS OF THE PLEADINGS

1. On November 1, 2018, plaintiff Ronnell M. Johnson, individually and on behalf of all others similarly situated ("Plaintiff"), filed a Summons and Class Action Complaint against Defendants (the "Complaint"), in the Santa Clara County Superior Court, "*Ronnell M. Johnson v. BUCA, Inc., et al.,*" Case No. 18CV337071 (the "State Action"). True and correct copies of the Summons and Complaint are attached hereto as Exhibits 1-2, respectively.

2. On November 5 and 20, 2018, Defendants' registered agent for service received copies of the Complaint via process server.

3. On November 16, 2018, Defendants' received the Superior Court's designation of the State Action as "complex" under the local rules. A true and correct copy of the Superior Court designation is attached hereto as Exhibit 3.

## II. NATURE OF THE SUIT

4. The Complaint alleges the following claims for relief: (1) Failure to Provide Meal Periods; (2) Failure to Provide Rest Periods; (3) Failure to Pay Hourly Wages; (4) Failure to Provide Accurate Written Wage Statements; (5) Failure to Timely Pay All Final Wages; and (6) Unfair Competition. See Exhibit 2, Complaint at pp. 1-19.

## III. SUMMARY OF THE REMOVAL REQUIREMENTS

5. The United States Supreme Court, in <u>Dart Cherokee Basin Operating Company, LLC v. Owens</u>, 135 S.Ct. 547, 551 (2014), summarized the removal procedures as follows:

To remove a case from a state court to a federal court, a defendant must file in the federal forum a notice of removal "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). When removal is based on diversity of citizenship, an amount-in-controversy requirement must be met. Ordinarily, "the matter in controversy [must] excee[d] the sum or value of $75,000." § 1332(a). In class actions for which the requirement of diversity of citizenship is relaxed, § 1332(d)(2)(A)–(C), "the matter in controversy [must] excee[d] the sum or value of $5,000,000," § 1332(d)(2). If the plaintiff's complaint, filed in state court, demands monetary relief of a stated sum, that sum, if asserted in good faith, is "deemed to be the amount in controversy." § 1446(c)(2). When the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so. § 1446(c)(2)(A).

\* \* \*

A statement "short and plain" need not contain evidentiary submissions.

## IV. THIS COURT MAINTAINS JURISDICTION PURSUANT TO CAFA

6. Pursuant to 28 U.S.C. § 1332(d)(2):

The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which – (A) any member of a class of plaintiffs is a citizen of a State different from any defendant.

7. In addition, CAFA confers jurisdiction in the district courts when: (1) the proposed class involves 100 or more members, and (2) the defendant is not a State, State official, or other governmental entity. 28 U.S.C. § 1332(d)(5).

8. As set forth below, this Court has original jurisdiction pursuant to 28 U.S.C. section 1332(d), in that: (1) it is a civil action; (2) the matter in controversy exceeds the sum of $5,000,000, exclusive of interest and costs; (3) Plaintiff is a citizen of a state different than Defendants; (4) the putative class consists of approximately 5,679 individuals; and (5) Defendants are not a State, State official, or other governmental entity.

- 3 -

DEFENDANTS' NOTICE OF REMOVAL OF ACTION

### A. THE AMOUNT IN CONTROVERSY EXCEEDS $5,000,000

9. CAFA authorizes the removal of class actions in which the amount in controversy for all class members exceeds $5,000,000. 28 U.S.C. § 1332(d)(2).

10. If the complaint is silent as to whether the amount in controversy is less than CAFA's jurisdictional threshold of $5,000,000, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." Dart Cherokee Basin Operating Company, LLC, 135 S.Ct. at 554.

11. Here, Plaintiff brings this action on behalf of himself and other similarly situated persons who have worked, or are currently working, as hourly employees in California for Defendants ("Class Members") from November 1, 2014 to the present ("Class Period"). See Exhibit 2, Complaint at ¶ 12.

12. Since the Complaint is silent as to the amount in controversy, Defendants need only present a plausible allegation to meet the jurisdictional threshold. Dart Cherokee Basin Operating Company, LLC, 135 S.Ct. at 554.

13. Although Defendants expressly deny any liability for the damages alleged in the Complaint, for purposes of determining whether the minimum amount in controversy has been satisfied, the Court must look to the allegations of the Complaint and presume that Plaintiff will prevail on his claims. Kenneth Rothschild Trust v. Morgan Stanley Dean Witter, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (citing Burns v. Windsor Ins. Co., 31 F.3d 1092, 1096 (11th Cir. 1994)) (stating that the amount in controversy analysis presumes that "plaintiff prevails on liability"). Put differently, "[t]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [Defendants'] liability." Lewis v. Verizon Communications, Inc., 627 F.3d 395, 400 (9th Cir. 2010).

14. For purposes of CAFA and Plaintiff's class-wide allegations, the amount in controversy is calculated as follows:

a. Defendants currently employ approximately 1,234 Class Members, who are and were, at all relevant times, paid at least the applicable State minimum wage during the Class Period of $9.00 per hour (or more) from November 1, 2014 to the present. Declaration of Danilo Acampado ("Acampado Dec."), ¶¶ 3 and 6.

b. Between November 1, 2014 and the present, Defendants formerly employed approximately 4,445 Class Members, who were, at all relevant times, paid at least the applicable State minimum wage during the Class Period. Acampado Dec., ¶¶ 4 and 6.

c. For purposes of example only, Plaintiff alleges a violation of California Labor Code sections 201, 202, and 203, for failure to pay all wages due to discharged and quitting employees. Under section 203, if an employer fails to pay any wages of an employee, who has been discharged or has quit, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action is commenced; but the wages shall not continue for more than 30 days. Assuming *arguendo* Plaintiff and Class Members were not paid all wages upon being discharged or quitting (as alleged in the Complaint), earned $9.00 per hour, and worked 8 hours per day, the waiting time penalties would be approximately **$9,601,200** ($9.00 per hour x 8 hours per day x 30 days x 4,445 former non-exempt employees = $9,601,200). Based on this claim alone, the amount in controversy has been satisfied.

d. For purposes of example only, Plaintiff also alleges a violation of California Labor Code section 226 for the failure to provide accurate itemized wage statements. Specifically, Plaintiff alleges that Defendants "failed to furnish" accurate written wage statements to Plaintiff and Class Members. Under section 226, an employee suffering injury as a result of a knowing and intentional failure by an employer to provide accurate itemized wage statements is entitled to recover the

greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000). Class Members are generally paid bi-weekly (i.e., 26 paychecks per year). Acampado Dec., ¶ 7. Assuming *arguendo* Defendants employed 1,234 Class Members in an average per pay period and the Class Members did not receive accurate itemized wage statements for the last year, the statutory penalty would be approximately **$3,146,700** ((1 pay period x $50.00) + (25 pay periods x $100.00) = $2,550 x 1,234 current employees = $3,146,700).

      e.    For purposes of example only, Plaintiff further alleges a violation of California Labor Code sections 226.7 and 512 and IWC Wage Order No. 5, Section 11 for failure to provide required meal periods. Pursuant to Wage Order No. 5, Section 11, if an employer fails to provide an employee a meal period in accordance with the applicable provisions of the Order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each work day that the meal period is not provided. During the Class Period, there are approximately 213 weeks from November 1, 2014 to the present. Assuming *arguendo* Defendants employed 1,234 Class Members on average per week, the Class Members missed one meal period per week, and earned $9.00 per hour, the penalties would be approximately **$2,365,578** ($9.00 per hour/penalty x 213 weeks x 1,234 non-exempt employees per week = $2,365,578). If Class Members missed two meal periods per week, and earned $9.00 per hour, the penalties would be approximately **$4,473,156** ($9.00 per hour/penalty x 2 penalties per week x 213 weeks x 1,234 non-exempt employees per week = $4,731,156).

      f.    For purposes of example only, Plaintiff also alleges a violation of California Labor Code section 226.7 for failure to provide required rest periods. Under Wage Order No. 5, Section 12, if an employer fails to provide an employee a

rest period in accordance with the applicable provisions of the Order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each work day that the rest period is not provided. During the Class Period, there are approximately 213 weeks from November 1, 2014 to the present. Assuming *arguendo* Defendants employed 1,234 Class Members on average per week, the Class Members missed one rest period per week, and earned $9.00 per hour, the penalties would be approximately **$2,365,578** ($9.00 per hour/penalty x 213 weeks x 1,234 non-exempt employees per week = $2,365,578). If Class Members missed two rest periods per week, and earned $9.00 per hour, the penalties would be approximately **$4,473,156** ($9.00 per hour/penalty x 2 penalties per week x 213 weeks x 1,234 non-exempt employees per week = $4,731,156).

15. Accordingly, based upon the definition of a Class Member and the Class Period, as well as the damages sought for just the claims set forth above **(which are in excess of $17 million)**, the alleged amount in controversy, excluding interest and costs, reasonably exceeds the sum of $5,000,000.

### B.   THE PARTIES ARE MINIMALLY DIVERSE

16. CAFA's diversity requirement is satisfied when any member of a class of plaintiff is a citizen of a state different from any defendant. 28 U.S.C. § 1332(d)(2).

17. Citizenship of the parties is determined by their citizenship status at the time of the lawsuit's commencement. See Mann v. City of Tucson, 782 F.2d 790 (9th Cir. 1986).

#### 1.   **Plaintiff is a Citizen of California**

18. Plaintiff, at the time he filed the Complaint (and at the time of removal), was "an individual residing in the State of California." See Exhibit 2, Complaint at ¶ 5.

19. Indeed, Class Members all performed work in California. See Exhibit 2, Complaint at ¶ 12.

### 2. Defendants Are Not Citizens of California

20. For diversity purposes, a corporation "shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

21. A corporation's "'principal place of business' refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities," *i.e.*, the corporation's "never center" which is typically found at the corporation's headquarters. Hertz Corp. v. Friend, 130 S.Ct. 1181, 1186 (2010). In other words, a corporation's "principal place of business" can be found where the corporation's "brain" is located. Id. at 1193.

22. In this regard, Defendant BUCA is and was, at all relevant times when this action was filed (and at the time of removal), a corporation under the laws of the State of Minnesota. See Exhibit 2, Complaint at ¶¶ 1 and 4; Declaration of Giovanni Yruela ("Yruela Dec."), ¶ 2.

23. Defendant BR2 is and was, at all relevant times when this action was filed (and at the time of removal), a corporation under the laws of the State of Minnesota. See Exhibit 2, Complaint at ¶¶ 1 and 4; Yruela Dec., ¶ 2.

24. In addition, Defendants' nerve centers and principal places of business are located in Orlando, Florida. See Exhibit 2, Complaint at ¶ 4; Yruela Dec., ¶¶ 2-3.

   a. For example, the corporate headquarters and home offices are located in Orlando, Florida. Id. at ¶ 3.

   b. The shareholder meetings are held in the State of Florida. Id. at ¶ 3.

   c. The Board of Directors meetings are held in the State of Florida. Id. at ¶ 3.

   d. All of Defendants' current executive officers reside in the State of Florida. Id. at ¶ 3.

   e. The administrative and financial offices are located in the State of Florida, which is also where Defendants maintain a substantial majority of their records. Id. at ¶ 3.

   f. A majority of Defendants' corporate policy decisions – including operational, executive, and administrative policy decisions – are made at their Orlando, Florida headquarters. Id. at ¶ 3.

25. Moreover, the presence of Doe defendants has no bearing on the diversity with respect to removal. See 28 U.S.C. § 1441(a) ("For purposes of removal under this Chapter, the citizenship of defendants used under a fictitious name shall be disregarded.").

26. Therefore, the minimal diversity element of CAFA removal is satisfied as Plaintiff is a citizen of California and Defendants are citizens of another state.

### C. THE NUMBER OF CLASS MEMBERS EXCEEDS 100

27. CAFA also provides that the district courts shall not have jurisdiction over actions where "the number of members of all proposed plaintiff classes in the aggregate is less than 100." 28 U.S.C. § 1332(d)(5).

28. Based upon the definition of a Class Member, the total number of putative class members is approximately 5,679. Acampado Dec., ¶ 5. As such, the putative class easily exceeds 100 members.

### D. DEFENDANTS ARE NOT GOVERNMENTAL ENTITIES

29. Defendants are not a State, State Official, or any other governmental entity. 28 U.S.C. § 1332(d)(5)(A); Yruela Dec., ¶¶ 2-3.

## V. THE NOTICE OF REMOVAL IS PROCEDURALLY CORRECT

30. Defendants timely filed this Notice of Removal within thirty (30) days of being served with the Complaint, and contemporaneously served all counsel with the Notice of Removal upon filing. 28 U.S.C. § 1446(b).

31. Defendants have also attached to this Notice, all pleadings, process, orders, and all other filings served upon it related to the State Action. 28 U.S.C. § 1446(a).

32. In addition, venue is proper in this District because this District and Division embrace the place in which the state action was filed and has been pending. 28 U.S.C. § 1441(a).

33. Finally, Defendants will promptly file a copy of this Notice of Removal with the Clerk of the Superior Court in which the action has been pending.

WHEREFORE, in the light of the foregoing, Defendants request this Court remove the instant case from the Superior Court of the State of California, County of Santa Clara, to the United States District Court for the Northern District of California.

Dated: December 4, 2018              BENT CARYL & KROLL, LLP


By: /s/ Jesse M. Caryl
    Jesse M. Caryl
    Attorneys for Defendants
    BUCA, Inc. and BUCA Restaurants 2, Inc.

# PROOF OF SERVICE

I, Christopher McBride, declare:

I am a citizen of the United States and employed in Los Angeles County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 6300 Wilshire Boulevard, Suite 1415, Los Angeles, California 90048. On December 4, 2018, I served a copy of the within document(s):

**DEFENDANTS' NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. SECTIONS 1332, 1441, AND 1446**

| X | by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below. |
|---|---|
| X | through the Court's ECF filing and service system to the individuals listed below (if applicable). |
|   | by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below. |

Shaun Setareh, Esq.  
H. Scott Leviant, Esq.  
William M. Pao, Esq.  
SETAREH LAW GROUP  
315 S. Beverly Drive, Suite 315  
Beverly Hills, CA 90212  
Tel: (310) 888-7771  
Fax: (310) 888-0109  

*Attorneys for Plaintiff Ronnell M. Johnson*

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct. Executed on December 4, 2018, at Los Angeles, California.

/s/ Christopher McBride  
Christopher McBride